CRENSHAW, Judge.
David Marcheck (Former Husband) appeals a final judgment of dissolution of his marriage to Donna Marcheck (Former Wife). He challenges, among other issues, values reflected in the equitable distribution (ED) worksheet. As part of the ED scheme, the court ordered Former Husband to make an equalizer payment to Former Wife of $35,777. Because there was not competent, substantial evidence supporting the court’s valuation of the business income, we reverse that portion of the final judgment of dissolution and affirm the remainder of the judgment without comment.
• Former Husband, an electrician, owns Daystar Electrical Contractors, Inc., at which Former Wife worked for some time handling much of the administration such as bookkeeping, payroll, and accounts receivable. The parties’ historical income was primarily derived from Daystar, and Former Wife received a paycheck like the other employees. When the economy soured, Daystar downsized and all of its employees were laid off; Former Wife, too, stopped working for Daystar and found employment elsewhere. Former Husband continued to operate Daystar and managed to keep it operating until the economy recovered. It is now moving toward profitability: as of trial Daystar had a pending job for which it billed $100,000 and accounts receivable, as of trial, of $40,000, some of which stems from the pending $100,000 job. There was no testimony as to what else comprises the $40,000 or what would be the usable (net) income from this amount.
The majority of this appeal has turned on Former Husband’s income vis-a-vis Daystar’s assets. The parties entered into a pretrial stipulation, though the scope and impact of that stipulation have been subject to litigation. As part of this stipulation, the parties agreed that Daystar’s accounts receivable were $16,951 prior to trial. There was competent, substantial evidence supporting that Former Husband had assets aside from Daystar’s accounts receivable valued at $136,228 and debt of $100,451.
In determining the equalizer payment to be made to Former Wife, the court initially calculated Daystar’s accounts receivable as $60,000. It then subtracted the stipulated amount of accounts receivable, $16,951, to arrive at $43,049. The court added this $43,079 to its valuation of $136,228-the value of Former Husband’s other assets. It then deducted Former Husband’s debt of $100,451 leaving a total of $35,777 as the equalizer payment. However, the court’s initial calculated amount of accounts receivable, $60,000, is not supported by competent, substantial evidence.
The crux of the problem is that the testimony regarding Daystar’s $100,000 job did not provide the evidence that the court relied upon. The $100,000 was the gross amount for the job. Similarly, the $40,000 figure the court used was the amount Daystar had already received including the $100,000 job and any others from that same year: that figure was still only a gross amount, not a net amount. And there is an indeterminate amount of overlap between the two figures as we do not know how much of the gross receipts includes the $100,000 job.
For the purpose of determining the amount of income that is attributable to a spouse in computing alimony, section 61.046(8), Florida Statutes (2010), defines “income” as
any form of payment to an individual, regardless of source, including, but not limited to: wages, salary, commissions and bonuses, compensation as an *1027 independent contractor, worker’s compensation, disability benefits, annuity and retirement benefits, pensions, dividends, interest, royalties, trusts, and any other payments, made by any person, private entity, federal or state government, or any unit of local government.
Moore v. Moore, 157 So.3d 435, 436 (Fla. 2d DCA 2015).[1] “In calculating a party’s monthly income, business expenses must be deducted from the party’s gross income.” Id. Thus, while the court could consider any of Daystar’s net income regardless of how it was subsequently distributed (salary to Former Husband, reinvested in business, etc.), the court could not hypothesize amounts, nor can gross incomes substitute for net incomes without more information. See id.; Vanzant v. Vanzant, 82 So.3d 991, 992-93 (Fla. 1st DCA 2011) (holding that a finding of former husband’s net income was not supported by the record because the relied-upon figures reflected the gross income shown on former husband’s amended financial affidavit, not his net income).
The numbers the court used are not otherwise supported by the record. There is no documentary evidence as to net incomes for the business or enough information for us to deduce the net income. Accordingly, there is no competent, substantial evidence supporting the ED scheme, and we must reverse and remand for further proceedings. On remand, it is within the trial court’s discretion to consider additional evidence.
Reversed in part, affirmed in part, and remanded.
LaROSE and SLEET, JJ., Concur.

. The 2011 statute governs the instant case but is unchanged from the version cited here.