VILLANTI, Chief Judge.
Scott Hanson (the Husband) appeals the amended final judgment of dissolution of his marriage to Rhonda Hanson (the Wife), raising three issues for review. First, we reject the Husband’s claim concerning the court’s decision to distribute the liability for accrued interest payable on certain notes to him in the equitable distribution scheme without further comment. Second, we reverse the alimony award and remand for recalculation because the trial court erred by basing that award on the Husband’s gross income rather than his net income. Finally, we reverse the portion of the judgment requiring the Husband to pay a portion of the Wife’s attorney’s fees and remand for reconsideration under the correct legal standard. In all other respects, we affirm.
Alimony Award
As to the alimony award, the Husband contends that the trial court erred by basing that award on his gross income rather than on his net income. This contention is supported by the record and requires us to reverse and remand for recalculation of the amount of alimony.
There is no dispute on this issue as to the law. “An award of alimony must be based on the income that is available to the party, i.e., the party’s net monthly income.” Moore v. Moore, 157 So.3d 435, 436 (Fla. 2d DCA 2015); see also Badgley v. Sanchez, 165 So.3d 742, 744 (Fla. 4th DCA 2015) (“The judgment is also deficient for failing to look to the parties’ net incomes in assessing need and ability to pay.”); Gilliard v. Gilliard, 162 So.3d 1147, 1154 (Fla. 5th DCA 2015) (“A party’s ability to pay alimony should be based on the party’s net income; not gross income.”); Kingsbury v. Kingsbury, 116 So.3d 473, 474 (Fla. 1st DCA 2013). An alimony award based on gross income must be reversed. See, e.g., Moore, 157 So.3d at 437; Badgley, 165 So.3d at 744-45.
Here, the amended final judgment plainly states that the Husband has “current monthly gross income of $6,842” and a monthly surplus of “$1,695 before considering tax implications and imputing income.” (Emphasis added.) And while the trial court subsequently imputed $300 per month in investment income to the Husband, nowhere in the amended final judgment did the trial court address the “tax implications” on the Husband’s gross income. Further, we note that the $2000 monthly alimony award is almost exactly the amount of the Husband’s pre-tax surplus of $1695 plus his imputed investment income of $300. Hence, it is readily apparent that the trial court erroneously failed to consider the Husband’s net income rath *1167 er than his gross income when fashioning its alimony award.
In defense of the trial court’s ruling, the Wife argues that the trial court could and did impute investment income to the Husband when determining his ability to pay. However, this is simply a non sequitur. The court’s decision to impute investment income to the Husband does not bear on the issue of whether the court properly considered only the Husband’s net income when determining alimony. Therefore, this argument cannot support the alimony award.
The Wife also argues for the first time in her brief that the Husband could take tax-free distributions from his IRAs to “make up the difference” between his net income and what he needs to pay the alimony award; however, this argument suffers from three infirmities. First, the Wife never made this argument in the trial court, and so no evidence was presented concerning the Husband’s ability—or lack thereof—to take tax-free IRA distributions. Second, this argument conflicts with the trial court’s express factual finding that neither party was able to take IRA distributions without penalty at this point in time. Third, this argument implicitly recognizes that the trial court awarded alimony in an amount that the Husband is simply not able to pay from his monthly net income. Hence, this newly raised argument cannot support the alimony award to the Wife.
For all of these reasons, we must reverse the $2000 per month alimony award and remand for reconsideration. And because we are doing so, we will briefly address two issues raised by the Husband in case they arise again on remand. First, the Husband contends that the trial court erred in its evaluation of the parties’ relative lifestyles for purposes of determining their[1] respective monthly needs. However, the trial court found that the Wife had a lifestyle need of $5983 and the Husband had a lifestyle need of $5147. Given that the Wife’s monthly rent was $2000 and the Husband’s monthly mortgage was $1464 for a comparable residence, this difference in the calculated lifestyle needs of the parties was not so disparate as to constitute an abuse of discretion.
Second, the Husband contends that the trial court erred by adding the $219 monthly premium for additional Survivor Benefit Plan (SBP) coverage to the Wife’s monthly need.[1] The Husband argues that because the Wife chose to purchase SBP coverage over, and above her coverture amount, she should be solely responsible for the premium as a voluntary expense rather than a “need.” While the trial court certainly could have determined that this was a voluntary expense incurred by the Wife, it was within the trial court’s discretion to consider this premium as part of the Wife’s need, particularly since the Wife’s portion of the Husband’s retirement benefit would otherwise be significantly reduced upon his death and the alimony award will also cease at that time. In essence, the trial court’s ruling was analo *1168 gous to requiring the Husband to purchase and pay for life insurance to secure his alimony obligation to the Wife—a requirement clearly within the trial court’s discretion to impose.[2] See Sobelman v. Sobelman, 541 So.2d 1153, 1154-55 (Fla. 1989) (holding that section 61.08(3), Florida Statutes, permits a trial court to order an obligated spouse to obtain life insurance or similar security to protect the receiving spouse’s alimony award in appropriate circumstances); Wrinkle v. Wrinkle, 592 So.2d 760, 761 (Fla. 5th DCA 1992) (analogizing the use of SBP benefits to the use of life insurance as security for the payment of alimony). And while we can appreciate the Husband wanting to limit the Wife to her “standard” benefit, under the facts here—where the Wife did not work during the parties’ long-term marriage and where she has limited earning capacity due to medical issues—we cannot say that the trial court’s ruling that will permit her to receive an amount after the Husband’s death comparable to what she will be receiving during the Husband’s lifetime constitutes an abuse of discretion.[3] Moreover, as the court noted in Wrinkle, “[i]f the trial court intended for the former wife to receive [the full amount awarded] in alimony, then having the former wife pay for the protection afforded by the survivor’s benefit is inconsistent [with] and detracts from the alimony award.” 592 So.2d at 761. For all of these reasons, on the record before us, we have no basis upon which to disturb this award.
In sum on this issue, we reverse the award of alimony because it was improperly based on the Husband’s gross income rather than his net income. On remand, once the Husband’s net income is determined, the trial court may then award the Wife alimony in an amount that the Husband has an ability to pay. The determination of the parties’ relative needs need not be reconsidered on remand.
Award of Attorney’s Fees
The Husband also contends that the trial court erred by ordering him to pay an additional $86,000 toward the Wife’s attorney’s fees, over and above the $47,277 he had already paid in temporary fees and costs. Because the trial court equalized the parties’ assets and incomes in the amended final judgment, it was improper for the court to also award the Wife her attorney’s fees. Accordingly, we reverse the attorney’s fee award. However, because we are remanding for recalculation of the alimony award, the trial court may reconsider the attorney’s fee award after it adjusts the alimony award.
 As a general rule, when “marital property has been equitably distributed and the parties’ incomes have been equalized through an alimony award, the trial court abuses its discretion by awarding attorney’s fees.” Hutchinson v. Hutchinson, 185 So.3d 528, 529 (Fla. 1st DCA 2015) (citing Galligar v. Galligar, 77 So.3d 808, 812-13 (Fla. 1st DCA 2011)); see also Lopez v. Lopez, 780 So.2d 164,166 (Fla. 2d DCA 2001) (concluding that an award of attorney’s fees to the wife was improper when “the parties’ financial positions ... were equalized through the award of alimony and equitable distribution of marital assets”); Matajek v. Skowronska, 927 So.2d 981, 988 (Fla. 5th DCA 2006) (“[A]n award of attorney’s fees is inappropriate if the parties are left in relatively equal financial circumstances after the dissolution.”); Reed v. Reed, 710 So.2d 727, 728 (Fla. 4th DCA 1998) (“Where the equitable *1169 distribution of the parties’ marital assets leave the parties in substantial financial parity, an award assessing attorney’s fees is an abuse of discretion.”). Further, the trial court cannot turn a blind eye to the availability of nonmarital assets as a source of funds for paying attorney’s fees. See Lopez, 780 So.2d at 166 (noting that the fact that the wife had “additional non-marital assets that enable her to retain competent counsel” was further support for the court’s determination that requiring the husband to contribute to the wife’s attorney’s fees was an abuse of discretion). Indeed, since the purpose of section 61.16, Florida Statutes, is to ensure that both parties have comparable ability to retain competent counsel, an award of attorney’s fees must be based on “the parties’ relative financial resources” when the final judgment is entered. Humerickhouse v. Humerickhouse, 932 So,2d 1142, 1145 (Fla. 2d DCA 2006). This includes all of their resources—not just earned income.
Here, the amended final judgment awards the Wife $601,192 in marital assets and $359,113 in nonmarital assets, for a total award of assets of $960,305. The Husband was awarded $601,192 in marital assets and $195,097 in nonmarital assets, for a total award of assets of $796,289. Hence, the Wife has received an award of assets that is significantly greater than that of the Husband. Further, the trial court essentially equalized the parties’ incomes through its award of alimony to the Wife. Therefore, when the amended final judgment was entered, the parties’ marital property had been equitably distributed and the parties’ incomes had been equalized through an alimony award, and the trial court should not have awarded attorney’s fees to the Wife.
The trial court’s error in this regard is compounded by the fact that the Husband has retired from military service and so the only income available is his retirement income and the-parties’ investment income. This is not a situation in which the Husband continues to have income and the possibility of bonuses that he can use to rebuild his retirement accounts after liquidating them to pay the Wife’s attorney’s fees. Compare DiNardo v. DiNardo, 82 So.3d 1102, 1106 (Fla. 2d DCA 2012) (noting that because the Husband was still working and had the chance to earn significant bonuses, the final judgment did not truly equalize the parties’ incomes for purposes of determining whether an award of attorney’s fees was proper), with Mertz v. Mertz, 287 So.2d 691 (Fla. 2d DCA 1973) (finding it was error to award the wife attorney’s fees when she received comparable marital assets to the husband, when she had significant nonmarital assets, and when the husband had but a few years left to work). Therefore, the award of attorney’s fees to the Wife constituted an abuse of discretion and must be reversed.
That said, however, it is clear that the trial court anticipated that the Wife would invest the assets she received—both marital and nonmarital—and it imputed $1400 per month in investment income to her based on her receipt of those assets. If the Wife is forced' to deplete those assets to pay her attorney’s fees, her investment income will be reduced. And it is improper for the trial court to consider an asset both as a source of investment income and as a source for paying attorney’s fees; Cf. Diffenderfer v. Diffenderfer, 491 So.2d 265, 267 (Fla. 1986). Therefore, • because the alimony award must be reconsidered on remand, the trial court may again award attorney’s fees to the Wife if the evidence shows the Wife’s need -and the Husband’s ability to pay after these adjustments, keeping in mind the general principle that fees are improper when assets and income are equalized.
*1170 Affirmed in part; reversed in part; remanded for further proceedings.
GASANUEVA and KHOUZAM, JJ., Concur.

. Using the SBP benefit in this fashion also allowed the parties and the court to avoid the issues of the availability and affordability of life insurance to the Husband.

. We note that this is not a situation in which the Wife will receive more in benefits after the Husband's death than her calculated need.